UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mikhail Kopelevich,<br><br>Plaintiff,<br><br>v.<br><br>Allstate Insurance Company, James Carew Agency, Inc., James Carew, Dillon Masi, John/Jane Does 1-5,<br><br>Defendants. | §<br>§<br>§<br>§ Civil Action No. 2:21-cv-6394<br>§<br>§<br>§<br>§<br>§<br>§ |

**Plaintiff's Original Complaint and Jury Demand**

**PARTIES**

1. The plaintiff is Mikhail Kopelevich, a natural person who was present in New York, Richmond County, for all calls in this case.

2. Allstate Insurance Company is an Illinois corporation operating from 4 MetroTech Centre, Suite 2000, Brooklyn, NY 11201.

3. Allstate Insurance Company can be served through its registered agent CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

4. James Carew Agency, Inc. is a New York corporation operating from 290 Main St., Port Washington, NY 11050.

5. James Carew Agency, Inc. can be served through its registered agent at NYS Department of State, 123 Williams St., New York, NY 10038 or at its principle place of operation at 290 Main St., Port Washington, NY 11050.

6. James Carew is a natural person and a corporate officer at James Carew Agency, Inc.

7. James Carew can be served at his place of employment at 290 Main St., Port Washington, NY 11050.

8. Dillon Masi is a natural person and an agent at James Carew Agency, Inc.

9. Dillon Masi can be served at his place of employment at 290 Main St, Port Washington, NY 11050.

10. John/Jane Does 1-5 are other liable parties currently unknown to Plaintiff.

## JURISDICTION AND VENUE

11. <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

12. <u>Personal Jurisdiction</u>.  This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to New York residents, and derive revenue from New York residents, and the sell goods and services to New York residents, including the plaintiff.

13. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at New York residents, including the plaintiff—occurred in this District and because the plaintiff resides in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

14. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

16. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

18. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1)[1].

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

20. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

21. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

22. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular: [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

23. FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

24. The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

25. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-952 (9th Cir. 2009).

26. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

27. This case relates to unsolicited telemarketing calls to Plaintiff to buy an automobile and homeowner insurance policies for the benefit of all the named defendants in this case.

**Calls to Plaintiff**

28. Upon information and belief, in the period from February 2, 2021 through September 29, 2021, Plaintiff received twenty-one (21) calls from a variety of spoofed caller IDs that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of the named defendants. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The calls were to ***-***-1446

29. Upon information and belief, the calls contained a pre-recorded message and the caller ID was spoofed.

30. Upon information and belief, Plaintiff never consented to receiving automated calls or calls with pre-recorded messages from any of the defendants or their agents.

31. Upon information and belief, on or about April 8, 2021 and September 29, 2021, Plaintiff was transferred to a live representative who provided Plaintiff an automobile and homeowners insurance quote for an Allstate Insurance Company policy.

32. Upon information and belief, these calls were not related to any emergency purpose.

33. Upon information and belief, the defendants did not have an internal do not call policy, did not place Plaintiff on an internal do not call policy, in violation of 47 CFR 64.1200(d).

34. Upon information and belief, at all times relevant to the allegations set forth herein, Plaintiff's cell phone number ***-***-1446 has been placed on the state and federal "Do Not Call" Registries. But despite that, the telemarketing calls were placed to Plaintiff by and on behalf the defendants.

35. Upon information and belief, Plaintiff has limited data storage capacity on his cellular

telephone. Incoming calls from the defendants consumed part of that capacity.

36. Upon information and belief, no emergency necessitated the calls.

37. Upon information and belief, each call was sent by an ATDS.

38. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

39. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

40. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

41. Plaintiff has been harmed, injured, and damages by the unwanted calls including, but not limited to:

    (1) reduced device storage space;

    (2) reduced data plan usage;

    (3) lost time tending to unwanted calls;

    (4) decreased cell phone battery life and usage as well as the need for more frequent re-charges of the battery;

    (5) decreased enjoyment and usage of Plaintiff's cell phone;

    (6) annoyance;

    (7) frustration, and

    (8) anger.

**Defendants James Carew Agency, Inc., James Carew, Dillon Masi, John/Jane Does 1-5 Knowingly and Willfully Violated Telemarketing Regulations**

42. Upon information and belief, defendants James Carew Agency, Inc., James Carew, Dillon Masi, and John/Jane Does 1-5 knowingly violated the TCPA by initiating automated calls with pre-recorded messages to Plaintiff.

43. Upon information and belief, defendants James Carew Agency, Inc., James Carew, Dillon Masi, and John/Jane Does 1-5 did not have a written do-not-call policy while making calls to Plaintiff.

44. Upon information and belief, defendants James Carew Agency, Inc., James Carew, Dillon Masi, and John/Jane Does 1-5 did not train their agents engaged in telemarketing on the existence and use of any do-not-call list.

45. Upon information and belief, defendants James Carew Agency, Inc., James Carew, Dillon Masi, and John/Jane Does 1-5's calls did not provide Plaintiff with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

**Plaintiff's cell phone is a residential number**

46. Upon information and belief, the calls were made to Plaintiff's cellular phone \*\*\*-\*\*\*-1446 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phone at his residents and has not done so for at least 10 years. Thus, he primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**FIRST CLAIM FOR RELIEF**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

**(Against All Defendants)**

47. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

48. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent.

49. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

50. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

51. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

**SECOND CLAIM FOR RELIEF**

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

**(As Against All Defendants)**

52. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

53. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing

solicitations despite lacking:

    a    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

    b    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

54. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

55. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

56. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Mikhail Kopelevich prays for judgment against Defendants jointly and severally as follows:

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

A. Leave to amend this Complaint to name additional Does as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 21 calls.

E. An award of damages to Plaintiff as allowed by law under the TCPA;

F. An award of interest, costs and attorneys' fees to Plaintiff as allowed by law and equity;

G. Such further relief as the Court deems necessary, just, and proper.

Dated: Brooklyn, New York
November 17, 2021

                                                Respectfully submitted,

                                                Galina Feldsherova (GF-7882)
                                                KOPELEVICH & FELDSHEROVA, P.C.
                                                Attorneys for Plaintiff
                                                241 37th St., Ste B439
                                                Brooklyn, NY 11232
                                                718-332-0577